No. 17-10238

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE USA, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF LABOR, et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Northern District of Texas, Dallas Division, Case No. 3:16-cv-1476-M

## ACLI AND NAIFA PLAINTIFFS-APPELLANTS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL

ANDREA J. ROBINSON
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109

MICHAEL A. YANOF
THOMPSON COE COUSINS & IRONS, LLP
700 North Pearl Street
25th Floor – Plaza of the Americas
Dallas, TX  75201

DAVID W. OGDEN
    *Counsel of Record*
KELLY P. DUNBAR
ARI HOLTZBLATT
KEVIN M. LAMB
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000

*Counsel for American Council of Life Insurers, National Association of Insurance and Financial Advisors, National Association of Insurance and Financial Advisors-Texas, National Association of Insurance and Financial Advisors-Amarillo, National Association of Insurance and Financial Advisors-Dallas, National Association of Insurance and Financial Advisors-Fort Worth, National Association of Insurance and Financial Advisor-Great Southwest, and National Association of Insurance and Financial Advisors-Wichita Falls*

# CERTIFICATE OF INTERESTED PERSONS

## No. 17-10238

---

CHAMBER OF COMMERCE OF THE USA, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF LABOR, et al.,

*Defendants-Appellees*.

---

The undersigned counsel of record certifies the following listed persons and entities as described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellants the American Council of Life Insurers, the National Association of Insurance and Financial Advisors, the National Association of Insurance and Financial Advisors-Texas, the National Association of Insurance and Financial Advisors-Amarillo, the National Association of Insurance and Financial Advisors-Dallas, the National Association of Insurance and Financial Advisors-Fort Worth, the National Association of Insurance and Financial Advisors-Great Southwest, and the National Association of Insurance and Financial Advisors-Wichita Falls are all nonprofit associations or organizations that have no parent corporation, and no publicly held corporation owns 10 percent or more of their respective stock.

- i -

## A.    Plaintiffs-Appellants

1.  American Council of Life Insurers
2.  National Association of Insurance and Financial Advisors
3.  National Association of Insurance and Financial Advisors-Texas
4.  National Association of Insurance and Financial Advisors-Amarillo
5.  National Association of Insurance and Financial Advisors-Dallas
6.  National Association of Insurance and Financial Advisors-Fort Worth
7.  National Association of Insurance and Financial Advisors-Great Southwest
8.  National Association of Insurance and Financial Advisors-Wichita Falls
9.  Others who are not participants in this matter but may be financially interested in its outcome include financial services providers, insurance companies, and retirement savers

## B.    Current and Former Attorneys for Plaintiffs-Appellants

David W. Ogden
Kelly P. Dunbar
Jessica P. Leinwand
Ari Holtzblatt
Kevin M. Lamb
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Andrea J. Robinson
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109

Michael A. Yanof
THOMPSON COE COUSINS &
    IRONS, LLP
700 North Pearl Street
25th Floor – Plaza of the Americas
Dallas, TX 75201

## C.    Co-Plaintiffs-Appellants

10.  Chamber of Commerce of the United States of America
11.  Financial Services Institute, Inc.
12.  Financial Services Roundtable
13.  Greater Irving-Las Colinas Chamber of Commerce
14.  Humble Area Chamber of Commerce d/b/a Lake Houston Area Chamber of Commerce
15.  Insured Retirement Institute
16.  Lubbock Chamber of Commerce
17.  Securities Industry and Financial Markets Association

18. Texas Association of Business
19. American Equity Investment Life Insurance Company
20. Indexed Annuity Leadership Council
21. Life Insurance Company of the Southwest
22. Lubbock Chamber of Commerce
23. Midland National Life Insurance Company
24. North American Company for Life and Health Insurance

## D.    Attorneys for Co-Plaintiffs-Appellants

Eugene Scalia
Jason J. Mendro
Paul Blankenstein
GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue, N.W.
    Washington, D.C.  20036

Steven P. Lehotsky
Janet Galeria
U.S. CHAMBER LITIGATION
    CENTER
1615 H Street, N.W.
Washington, DC 20062

David T. Bellaire
Robin Traxler
FINANCIAL SERVICES INSTITUTE,
    INC.
607 14th Street, N.W., Suite 750
Washington, DC 20005

Kevin Carroll
Ira D. Hammerman
SECURITIES INDUSTRY AND
    FINANCIAL MARKETS
    ASSOCIATION
1101 New York Avenue, N.W.
Washington, D.C. 20005

James C. Ho
Russell H. Falconer
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX  75201

Kevin Richard Foster
Felicia Smith
FINANCIAL SERVICES
    ROUNDTABLE
600 13th Street, N.W., Suite 400
Washington, DC 20005

J. Lee Covington II
INSURED RETIREMENT INSTITUTE
1100 Vermont Avenue, N.W.
Washington, DC 20005

Joseph P. Guerra
Peter D. Keisler
Eric D. McArthur
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005

Yvette Ostolaza
SIDLEY AUSTIN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201

**E.     Defendants-Appellees**

25.     United States Department of Labor
26.     Edward C. Hugler, Acting Secretary, U.S. Department of Labor

**F.     Attorneys for Defendants-Appellees**

Nicholas C. Geale
G. William Scott
Edward D. Sieger
Thomas Tso
Megan Hansen
U.S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
200 Constitution Avenue, N.W.,
    Suite N-2119
Washington, DC 20210

Michael Shih
Michael S. Raab
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, APPELLATE
    SECTION
950 Pennsylvania Avenue, N.W.,
    Suite 7268
Washington, DC 20530

Galen N. Thorp
Emily Newton
Joyce R. Branda
John R. Parker
Judy L. Subar
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL
    PROGRAMS BRANCH
20 Massachusetts Avenue, N.W.,
    Room 6140
Washington, DC 20001

**G.     Amici in the District Court**

27.     AARP
28.     AARP Foundation
29.     American Association for Justice
30.     Financial Planning Coalition
31.     Public Citizen Inc.
32.     Better Markets Inc.
33.     Consumer Federation of America
34.     Public Investors Arbitration Bar Association
35.     National Black Chamber of Commerce

**H.     Attorneys for Amici in the District Court**

Mary Ellen Signorille
AARP Foundation Litigation
601 E St., N.W.
Washington, DC 20049

Bernard A. Guerrini
6500 Greenville Avenue, Suite 320
Dallas, TX 75206

Martin Woodward
STANLEY LAW GROUP
6116 North Central Expressway,
Suite 1500
Dallas, TX 75206

Deepak Gupta
Matthew W. H. Wessler
GUPTA WESSLER PLLC
1735 20th Street, N.W.
Washington, D.C. 2009

Brandan S. Maher
STRIS & MAHER LLP
1920 Abrams Parkway, Suite 430
Dallas, TX 75124

Doug D. Geyser
STRIS & MAHER LLP
6688 North Central Expressway,
   Suite 1650
Dallas, TX 75206

Brent M. Rosenthal
ROSENTHAL WEINER LLP
12221 Merit Drive, Suite 1640
Dallas, TX 75251

Julie Alyssa Murray
PUBLIC CITIZEN LITIGATION
   GROUP
1600 20th Street, N.W.
Washington, DC 20009

Braden W. Sparks.
BRADEN W. SPARKS PC
12222 Merit Drive, Suite 800
Dallas, TX 75251

Dennis M. Kelleher
BETTER MARKETS INC.
1825 K. Street, N.W., Suite 1080
Washington, DC 20006

Theodore Carl Anderson, III
Alexandra Treadgold
KILGORE & KILGORE PLLC
3109 Carlisle Street, Suite 200
Dallas, TX 75204

Richard Aaron Lewins
LEWINSLAW
7920 Belt Line Road, Suite 650
Dallas, TX 75254

Charles Flores
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010

Brian W. Barnes
David H. Thompson
Peter A. Patterson
COOPER & KIRK PLLC
1523 New Hampshire Ave NW
Washington, DC 20036


/s/  David W. Ogden
DAVID W. OGDEN
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000

March 22, 2017

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ................................................................ vii

INTRODUCTION ................................................................1

BACKGROUND ................................................................3

ARGUMENT ................................................................9

I.    APPELLANTS ARE LIKELY TO PREVAIL ON APPEAL ......................................10

      A.    The Rule Violates The First Amendment ..........................................10

      B.    The Rule Is Arbitrary And Capricious ..............................................16

II.   THE REMAINING FACTORS SUBSTANTIALLY FAVOR AN
      INJUNCTION ................................................................19

      A.    Appellants Will Be Irreparably Injured Absent An
            Injunction..............................................................19

      B.    The Balance Of Equities Favors Preserving The Status
            Quo ................................................................22

      C.    The Public Interest Favors An Injunction ..........................................22

CONCLUSION ................................................................23

# TABLE OF AUTHORITIES

## CASES

Page(s)

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ..................................... 12

*Allstate Insurance Co. v. Abbott*, 495 F.3d 151 (5th Cir. 2007) ............................. 15

*American Equity Investment Life Insurance Co. v. SEC*, 613 F.3d 166 (D.C. Cir. 2010) ............................................................................................ 19

*American Health Care Ass'n v. Burwell*, 2016 WL 6585295 (N.D. Miss. Nov. 7, 2016) ........................................................................ 21, 22, 23

*Associated Builders & Contractors of Southeast Texas v. Rung*, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016) ............................................. 20

*Barber v. Bryant*, 833 F.3d 510 (5th Cir. 2016) ....................................................... 9

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .............................................................. 13

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ................................ 12

*Campaign for Southern Equality v. Bryant*, 773 F.3d 55 (5th Cir. 2014) ............................................................................................................ 10

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980) .................................................................. 15

*Dialysis Patient Citizens v. Burwell*, 2017 WL 365271 (E.D. Tex. Jan. 25, 2017) ...................................................................................................... 21

*Edenfield v. Fane*, 507 U.S. 761 (1993) ................................................................. 14

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................................... 20

*Florida Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956 (5th Cir. 1981) ............................................................................. 9

*Michigan v. EPA*, 135 S. Ct. 2699 (2015) ........................................................... 8, 16

*Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129 (8th Cir. 1997) ............................................................................................................ 15

*Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) ............................................18

*National Federation of Independent Business v. Perez*, 2016 WL 3766121 (N.D. Tex. June 27, 2016) ..............................................20

*Nevada v. DOL*, 2016 WL 6879615 (E.D. Tex. Nov. 22, 2016) ......................21, 23

*Resolute Forest Products, Inc. v. Department of Agriculture*, 2016 WL 2885869 (D.D.C. May 17, 2016) ..................................19

*Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981).............................................................9

*Serafine v. Barnaman*, 810 F.3d 354 (5th Cir. 2016) ........................................13, 14

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ...................................10, 11, 14, 15

*Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.3d 535 (5th Cir. 2013) ....................................................................20

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ..........................................................21

*Texas v. United States*, 2016 WL 4426495 (N.D. Tex. Aug. 21, 2016).................23

*Thompson v. Western States Medical Center*, 535 U.S. 357 (2002) .......................12

*United Airlines, Inc. v. FERC*, 2016 WL 3568136 (D.C. Cir. July 1, 2016) ....................................................................................................19

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)..................................................................12

*Weaver v. U.S. Information Agency*, 87 F.3d 1429 (D.C. Cir. 1996).....................15

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)......................................................................................12

## DOCKETED CASES

*Associated Builders & Contractors of Southeast Texas v. Rung*, No. 1:16-cv-425-MAC (E.D. Tex.) ................................................................23

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 80b-2 ........................................................................................7

29 C.F.R. § 2510.3-21 ...........................................................................10, 14

Federal Rule of Appellate Procedure 8 .......................................................1

FINRA Rules
    Rule 2111 ...............................................................................................7
    Rule 2330 ...............................................................................................7

## OTHER AUTHORITIES

Brien, Michael J. & Constantijn W.A. Panis, *Annuities in the Context of Defined Contribution Plans* (Nov. 2011), *available at* https://www.dol.gov/sites/default/files/ebsa/researchers/analysis/retirement/Deloitte2011.pdf ...........................................................................5

NAIC 2010 Suitability Model §§ 5(I), 6(A) ..............................................7

# INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8(a)(1), Plaintiffs-Appellants American Council of Life Insurers ("ACLI"), National Association of Insurance and Financial Advisors ("NAIFA"), NAIFA-Texas, NAIFA-Amarillo, NAIFA-Dallas, NAIFA-Fort Worth, NAIFA-Great Southwest, and NAIFA-Wichita Falls (collectively, "Appellants") move for an injunction pending appeal. Appellants join in and incorporate by reference the injunction request filed by the Chamber of Commerce Appellants ("Chamber Appellants"). Appellants move separately to offer additional reasons why an injunction is necessary.

The traditional four factors governing injunctions pending appeal compel an injunction here: (1) Appellants are likely to prevail on their legal challenges to the "Fiduciary Rule," including their claims that the Rule violates the First Amendment by unnecessarily burdening the commercial speech rights of Appellants' members and that, in adopting the Rule, the Department of Labor ("DOL") breached core duties of reasoned decision-making under the Administrative Procedure Act ("APA"); (2) as set forth in the Chamber Appellants' motion and explained further below, without an injunction, Appellants' members will suffer grave constitutional and economic injuries that cannot be remedied later—the injuries to First Amendment rights alone require injunctive relief; (3) DOL will not be harmed by an injunction preserving the status

quo pending appeal (a proposition made particularly clear by DOL's own

substantial hesitations about the wisdom of the Rule); and (4) the public interest

strongly favors a modest delay to permit full appellate review.

This case also presents special circumstances that warrant an injunction.

The President recently directed DOL to consider rescinding or revising the Rule,

expressing particular concern to know whether the Rule "has harmed or is likely to

harm investors due to a reduction of Americans' access to certain retirement

savings offerings."  Chamber App. 618.  In the wake of that directive, and with the

Rule's "applicability date" of April 10, 2017 rapidly approaching, DOL recognized

that "the examination" ordered by the President could "prompt[] [DOL] to propose

rescinding or revising the [R]ule."  Chamber App. 622.  Accordingly, to avoid

imposing "two major changes in the regulatory environment rather than one," *id.*,

DOL issued a notice of proposed rulemaking on March 2, 2017, to extend the

applicability date for 60 days to June 9, 2017.  Of course, Appellants' members

must continue to plan for the contingency that it will become effective on April 10.

And even if the applicability date is delayed 60 days, they must plan on complying

with the Rule beginning on June 9.

In these circumstances, an injunction pending appeal is vital.  In a scant 20

days, the Rule is scheduled to go into effect.  The comment period on the 60-day

extension did not close until March 17, and even if DOL ultimately decides to

grant an additional 60 days, it may not be in a position to do so sufficiently in advance to avoid imposing additional costs that can never be recovered.  Nor is there any guarantee that DOL will grant the extension.  Given the April 10 applicability date and the significant scope of the changes required to comply with the Rule, Appellants' members will be irreparably harmed without clarity now. Moreover, resolution of this appeal will almost certainly extend beyond a 60-day administrative extension, and while DOL could of course entertain further extensions, the uncertainty such a process will entail would impose considerable costs and constitutional injuries pending this Court's review.

For these reasons as well as those set forth by the Chamber Appellants, Appellants respectfully ask the Court to enjoin the Rule pending appellate review.[1]

## BACKGROUND

1.      Appellants are national and Texas-based trade associations whose members issue and sell annuities and other life insurance products.  Those products play an important role in helping consumers address their retirement needs and various contingencies.  American retirement savers face many risks:  They must save enough to provide for a potentially long life after retirement.  They must

---

[1]      Appellants join the Chamber Appellants in respectfully requesting that the Court rule on this motion by Tuesday, April 4, 2017.

protect their assets from the effects of inflation.  And they must protect them against weak markets and declining asset values.

The annuity products that Appellants' members issue, market, and sell provide unique opportunities for consumers to achieve those objectives.  An annuity can protect a retirement saver who lives a long life by providing a stream of guaranteed income payments *for life*.  Retirement savers can further choose annuity products with features that guard against inflation and/or investment-asset decline.  Different annuity products balance those protections differently.  For example, a "fixed-rate annuity" prioritizes protection against investment risk by setting a declared interest rate that does not vary as the market rises or falls.  A "fixed indexed annuity," by contrast, balances protections against investment and inflation risk by tying rates, in part, to a market index, such as the S&P 500, while guaranteeing that rates will never fall below a specified minimum.  A "variable annuity" unlocks the full potential of investment market growth and thus maximizes protection against inflation risk by basing payments on the performance of a portfolio of assets selected by the retirement saver.

The popularity of annuities reflects the critical role they play in today's retirement marketplace, particularly as held within tax-advantaged Individual Retirement Accounts ("IRAs").  A DOL-commissioned study "found that beneficiaries of lifelong guaranteed income"—through an annuity or pension—

"were more satisfied in retirement and suffered from fewer depressions symptoms than those without such income." Brien & Panis, *Annuities in the Context of Defined Contribution Plans* 1 (Nov. 2011), https://www.dol.gov/sites/default/files/ ebsa/researchers/analysis/retirement/Deloitte2011.pdf; ACLI App. 520-521 (citing Brien & Panis).[2] The "boost in well-being became stronger" the longer a person was retired—a finding "consistent with the notion that … recipients of lifelong-guaranteed income … are less concerned with outliving their resources." *Id.* Numerous other studies in the administrative record demonstrated the singular value of annuities to retirement savers. ACLI App. 151, 193, 523-524, 584-586.

2.    Consumers learn about annuities the same way they learn about other products: through conversations with salespeople. For fixed annuities, salespeople often are insurance agents; for variable annuities, registered brokers. Insurance companies pay agents and brokers sales commissions to compensate them for the time and expertise needed to sell annuities. Chamber App. 580. Other compensation models, like annual fees based on a percentage of assets, are a poor fit for annuities because most of agents' and brokers' efforts occur up front. ACLI App. 151, 477. Fee-based accounts also typically require savers to maintain a minimum balance between $100,000 and $250,000—an amount that places such accounts out of reach for most Americans. Chamber App. 378. And because

---

[2]    "ACLI App." refers to the appendix filed with this motion. "Chamber App." refers to the appendix filed with the Chamber Appellants' motion.

savers often hold annuities for a long time without needing ongoing advice, switching to annual fees would increase costs for many annuity owners without adding any corresponding benefit.  ACLI App. 172-173, 476-477.

3. Comprehensive federal securities and state insurance regulations govern annuities.  ACLI App. 194-195, 202-471.  Designed to protect consumers, these regulations have the same stated goals DOL has articulated in promulgating the Rule.  As insurance products, all annuities are subject to state insurance laws administered by state insurance regulators.  In addition, the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA") regulate the sale of variable annuities.  This regulatory oversight— strengthened in recent years—is designed to ensure that consumers receive truthful, valuable information about investment options and suitable retirement recommendations and to punish sellers who fall short.

4. The Rule promulgated by DOL will solve no problem not already addressed by these other regimes, and it will have devastating consequences for retirement savers' access to annuity products.  As explained more fully by the Chamber Appellants, the Rule combines a sweeping expansion of who is an "investment advice" fiduciary under the Employment Retirement Income Security Act of 1974 ("ERISA") with the creation of a new prohibited-transaction exemption ("PTE") called the Best Interest Contract Exemption ("BICE").  The

Rule's newly expansive definition would encompass brokers and insurance agents selling annuities to IRAs, thereby prohibiting receipt of commissions on those sales. The BICE purports to permit brokers and agents to continue to receive commissions so long as the insurer executes a contract imposing a vast array of onerous conditions that are enforceable through class-action litigation.

The Rule breaks sharply with past DOL regulations and federal law in at least two significant ways. First, the Rule discards a longstanding distinction between fiduciary investment advisers and non-fiduciary salespersons. For more than 75 years, advisers hired to provide impartial investment advice have been required to comply with fiduciary obligations imposed by the Investment Advisers Act of 1940. In other words, if you are selling *advice* and not products, you are a fiduciary. But agents and brokers who provide advice "solely incidental" to selling *products* have had to comply with salesperson-specific regulations, including prohibitions against false or misleading speech and more recently suitability requirements. *E.g.*, 15 U.S.C. § 80b-2(a)(11); FINRA Rules 2111, 2330; NAIC 2010 Suitability Model §§ 5(I), 6(A). DOL's previous interpretation of "investment advice," which has stood for four decades prior to the Rule, respected this statutory and commonsense distinction by conditioning fiduciary status on characteristics emblematic of a historical fiduciary relationship. The Rule discards

this longstanding distinction, imposing fiduciary status on anyone merely "recommend[ing]" products even in garden-variety sales presentations.

Second, the Rule subjects different types of annuities to entirely different legal regimes. Until now, these similar products have been regulated similarly. Indeed, since 1977, DOL itself has regulated all annuities the same way— permitting annuities to be sold under an exemption (referred to as "PTE 84-24") that permitted commissions. The Rule, however, establishes different regulatory requirements for the sale of different annuities, retaining the "streamlined" PTE 84-24 for products like fixed-rate annuities that DOL wishes to "promote" for consumers, but excluding from PTE 84-24 variable and fixed indexed annuities and thus requiring these products to be sold under the "more stringent" BICE. ACLI App. 115-116, 118. The Rule thereby tilts the playing field to help the annuity products favored by DOL and to hurt those disfavored.

5.     Shortly after DOL issued the final Rule, Appellants filed this suit, which was consolidated with two other suits. Appellants argued, among other things, that the Rule violates the First Amendment rights of consumers and annuity sellers to receive and provide truthful, non-misleading information about annuities; that DOL violated its bedrock duty under the APA to consider "the advantages *and* disadvantages of [its] decisions," *Michigan v. EPA*, 135 S. Ct. 2699, 2707 (2015), because it never grappled with the harm that the Rule will cause to consumers by

reducing their access to variable and fixed indexed annuities; and that DOL failed to account adequately for existing annuity regulation, which already protects consumers. Shortly after the President on February 3, 2017 directed DOL to reevaluate the Rule, the district court rejected these and other arguments, denied Appellants' motion for summary judgment, and granted summary judgment to the government. Appellants timely filed a notice of appeal.

On March 11, Appellants filed for an injunction pending appeal in the district court. The district court denied the motion on March 20, 2017.

## ARGUMENT

An injunction pending appeal is warranted because Appellants (1) are likely to prevail on appeal and (2) will be irreparably harmed without it, and its issuance (3) will not substantially harm DOL and (4) advances the public interest. *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). Here, where free speech rights are at stake, all four factors "are closely tied to" likely success on the merits. *Florida Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957-958 (5th Cir. 1981). Moreover, because the injunction "seeks to maintain the status quo," *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981), this test is not "mechanical," and an injunction should issue where, as here, Appellants "present a substantial case on the merits when a serious legal question is involved and show that the balance of

equities weighs heavily in favor of" the injunction. *Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (internal quotation marks omitted).

## I.     APPELLANTS ARE LIKELY TO PREVAIL ON APPEAL

In addition to the legal claims identified by the Chamber Appellants, *see* Chamber Mot. 12-21, Appellants are likely to prevail on their substantive challenges to the Rule under the First Amendment and the APA.

### A.     The Rule Violates The First Amendment

1.     The First Amendment protects commercial speech and prohibits regulation that discriminates based on content. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). The Rule is obviously unconstitutional under the Supreme Court's application of those principles. As with the restrictions struck down in *Sorrell*, the Rule here is improperly targeted at and triggered by commercial speech—namely, what DOL calls "recommendations" by an insurance agent or broker to purchase a product. 29 C.F.R. § 2510.3-21(b)(1). Specifically, the Rule prohibits a salesperson from recommending a retirement product—for example, by accurately describing the product's features while truthfully stating that "it would provide a stable source of income for you"—unless the seller incurs the added costs and legal obligations of a fiduciary relationship.

Like the restrictions invalidated in *Sorrell*, these speech restrictions are premised not on DOL's belief that the speech is necessarily false or misleading,

but concern about "dangers posed by conflicts of interest and asymmetries of information." Chamber App. 418; *cf.* 564 U.S. at 576. And like the State in *Sorrell*, DOL here concluded that consumers cannot be trusted to make choices in their own best interest about products like variable and fixed indexed annuities, and that it is not enough therefore to require sales information about those products to be truthful and non-misleading. As *Sorrell* makes clear, that premise is at war with the First Amendment: "[T]he fear that speech might persuade provides no lawful basis for quieting it." *Id.* at 576; *see id.* at 578.

Likewise, as in *Sorrell*, the Rule is doubly problematic because it discriminates among subject matters, speakers, and listeners. 564 U.S. at 563-564. Thus, insurance agents "recommending" fixed-rate annuities need only comply with the streamlined PTE 84-24 to receive a sales commission, while an agent or broker "recommending" variable or fixed indexed annuities must comply with the far more burdensome BICE. The BICE's already stringent provisions are made more onerous still if an insurer wishes to "recommend" its own products. Chamber App. 550-551. And, again, the Rule imposes these burdens on entirely truthful and non-misleading speech.

For those reasons, like the burdens and content discriminations at issue in *Sorrell*, the Rule fails constitutional scrutiny. *See* 564 U.S. at 571 (explaining that restrictions of this kind fail "intermediate" as well as "stricter" forms of First

Amendment review). The Supreme Court has repeatedly made clear that the government can have no legitimate interest in depriving consumers of accurate commercial information "for what [it] perceives to be their own good." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996); *see Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976).

Moreover, the Rule was not narrowly tailored. To dispel any confusion about when someone is acting as a salesperson rather than a fiduciary adviser, DOL could have mandated clear disclosures. *E.g.*, *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Likewise, with respect to purportedly harmful products or unreasonable compensation, Congress could have regulated these directly, or DOL could have undertaken to educate consumers itself. *E.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2759 (2014). DOL rejected these more tailored approaches, opting broadly to regulate commercial speech, based on a view the Supreme Court has long foreclosed—that consumers cannot be trusted to make sense of truthful commercial speech in their own best interests.

2.    The district court offered three unpersuasive reasons for rejecting the First Amendment claim. ***First***, contrary to that court's contention, the Rule is not virtually immune from First Amendment scrutiny on the theory that it merely

regulates "professional conduct."  Chamber App. 196.  Where "professional speech" has been held entitled to lesser protection, it has been speech in *existing* fiduciary relationships of trust and confidence, such as between an attorney and client or psychologist and patient.  Unlike investment advisors and investors, salespeople and retirements savers are not in existing fiduciary relationships—indeed, DOL disclaimed the need to establish that these relationships are, in fact, ones of trust and confidence, taking the position that the Rule "artificially *create*[s]" such relationships, DOL MSJ Br. 42 (Dist. Ct. Dkt. 49).  The district court simply failed to appreciate that the First Amendment infirmity of the Rule is that it imposes fiduciary burdens on *non*-fiduciary speech.

That failure is a significant one.  As this Court has recognized, the professional speech doctrine is "properly limited" in application to "the actual practice of the profession" in existing "fiduciary relationship[s]."  *Serafine v. Barnaman*, 810 F.3d 354, 360 (5th Cir. 2016).  Thus, even if the doctrine insulated regulation of fiduciary speech from First Amendment scrutiny, the district court erred in extending that doctrine to regulate non-fiduciary sales speech.  Accepting the district court's reasoning, the government may freely suppress non-fiduciary speech simply by relabeling it as "fiduciary."  The Supreme Court has rightly rejected that proposition.  *See Bigelow v. Virginia*, 421 U.S. 809, 826 (1975) ("[The government] cannot foreclose the exercise of constitutional rights by mere labels.").

- 13 -

In addition, the professional speech doctrine rests on the government's "power to establish standards for licensing practitioners and regulating the practice of professions." *Serafine*, 810 F.3d at 359 (internal quotation marks omitted). Yet DOL neither licenses the professionals subject to the Rule, nor regulates the practice of those professions; the SEC and state insurance commissions do. Overlooking this point, the district court became the *first* to extend professional speech doctrine to restrictions outside government licensing and regulation of professional practice—a broad extension that contravenes this Court's decision in *Serafine*.[3]

**Second**, the district court was also clearly wrong to credit DOL's argument that any commercial speech affected by the Rule is "misleading." Chamber App. 201. The Rule applies to any "suggestion" to buy an annuity or other retirement product, 29 C.F.R. § 2510.3-21(b)(1)—regardless of whether the information provided is all true, and the speaker is understood to be selling a product, not offering disinterested advice. The fact that a seller (always) has a financial interest

---

[3]     The district court held that the professional speech doctrine—not ordinary commercial speech protections—applied because "annuity salespeople help consumers assess whether an annuity is a good choice, and … the sales are made on a personalized basis." Chamber App. 197. But Supreme Court precedent, as well as common sense, establish that those features characterize a vast swath of everyday sales conversations protected by the First Amendment. *E.g.*, *Sorrell*, 564 U.S. at 558, 564-565 (targeted promotion of brand-name drugs); *Edenfield v. Fane*, 507 U.S. 761, 756-766 (1993) (personal solicitation by certified public accountants).

in a transaction does not make sales speech inherently deceptive.  If that were the law, *all* sales recommendations would be denied the protection of the First Amendment.  The Supreme Court's commercial speech jurisprudence, however, rests on the opposite proposition—that "a great deal of vital expression" "results from an economic motive."  *Sorrell*, 564 U.S. at 567; *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 167 & n.63 (5th Cir. 2007).

*Third,* the district court was wrong (for many reasons) to deem Appellants' First Amendment claim waived.   Chamber App. 191-195.  Most importantly, Appellants brought their First Amendment claim under the Declaratory Judgment Act, seeking to enjoin prospective application of the Rule to members' constitutionally protected sales speech.  ACLI App. 2, 97, 104.  Typical administrative law doctrines of exhaustion and waiver do not limit the broad availability of "simple pre-enforcement attack[s] on [government speech] regulation[s]."  *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996); *see, e.g.*, *Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129 (8th Cir. 1997).  Left to stand, the district court's reasoning would forever bar a party from asserting First Amendment claims it did not raise in a rulemaking—even though it was not required to participate in the administrative process.  That is not, and should not be, the law.

**B.    The Rule Is Arbitrary And Capricious**

Appellants are also likely to prevail on their claim that DOL violated the APA for at least two reasons. *First*, DOL wholly failed to consider important disadvantages of the Rule—specifically, the harm to consumers from decreased access to variable and fixed indexed annuities. "[R]easonable regulation ordinarily requires paying attention to the advantages *and* the disadvantages of agency decisions." *Michigan*, 135 S. Ct. at 2707. But here DOL conceded it did not assess the disadvantages of decreased access to variable and fixed indexed annuities as a "separate consideration." DOL MSJ Br. 68. That omission renders the Rule arbitrary and capricious.

The administrative record demonstrated the enormous benefits that variable and fixed indexed annuities provide retirement consumers. ACLI App. 164, 193, 652-656. Commenters stressed, for example, that annuities are the sole source of guaranteed lifetime income during retirement, *id.* at 151, 523, an important benefit in a marketplace in which consumers are living longer but without pensions. Others discussed why a range of annuity options was important to consumers to help balance longevity, inflation, and investment risks: "Annuities often combine insurance against longevity risk with other 'living benefits' that protect against additional financial risks that retirees face, including investment risk and inflation risk." *Id.* at 586.

The record also demonstrated that the Rule would seriously interfere with consumer access to certain annuities, skewing the marketplace.  In particular, insurers have long paid a sales commission to compensate insurance agents and brokers for the significant effort involved in learning about, marketing, and selling annuities.  ACLI App. 151.  But under the Rule, to continue to pay commissions, variable and fixed indexed annuities would need to be sold under the BICE, while fixed-rate annuities can be sold under the less onerous PTE 84-24.  By exposing those who sell variable and fixed indexed annuities to the BICE—with the risk of "class litigation, and liability and associated reputational risk," Chamber App. 415—the Rule creates substantial incentives to recommend fixed-rate annuities over variable and fixed indexed annuities.  As a result, the Rule will decrease consumer access to variable and fixed indexed annuities—even in circumstances where those annuities would have significant benefits for retirement savers.

The district court barely addressed this substantial defect in the rulemaking, stating only (in a footnote) that it was "unpersuaded that the new rules reduce consumer access to FIAs or variable annuities."  Chamber App. 64.  But the court offered no justification for this conclusion, which contradicts the administrative record and DOL's own statements in the rulemaking.  Throughout the rulemaking, DOL acknowledged that placing a product in the BICE, rather than PTE 84-24, would materially affect the market for that product.  For example, DOL explained

that placing fixed-rated annuities in "PTE 84-24 will promote access to the[m]," ACLI App. 115, and that moving fixed indexed annuities to the BICE was necessary precisely to "avoid[] creating a regulatory incentive to preferentially recommend indexed annuities" over variable annuities and mutual funds. Chamber App. 488; ACLI App. 120-121.

DOL thus plainly understood that placing products in the BICE rather than PTE 84-24 would decrease access to those products. Reasoned decision-making required DOL to account openly for the benefits of the products it sought to drive from the market. It did not. And its failure to consider this "important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), renders the Rule unlawful.

***Second***, DOL unreasonably disregarded the extensive, and recently strengthened, regulatory framework that already protects consumers with respect to annuities. In particular, DOL failed reasonably to examine whether changes in federal and state regulation of annuities since 2009—the date of the latest mutual fund study DOL identified in the record as demonstrating harm to investors—had already addressed the concerns that animated the Rule. Indeed, the lion's share of the data and virtually all the anecdotal evidence relied on by DOL *preceded* important changes in extant regulatory programs, programs intended by other regulators (such as state insurance commissions and FINRA) to protect consumers

- 18 -

from the same harms posited by DOL.  It was arbitrary and capricious for DOL to rely on studies to show a regulatory failure that, by definition, predate significant regulatory reforms.  *See Resolute Forest Prods., Inc. v. Dep't of Agric.*, 2016 WL 2885869, at *19 (D.D.C. May 17, 2016) ("[W]here an agency … has not made a reasonable effort to ensure that appropriate data *was* relied upon, its decision is arbitrary and capricious[.]"); *cf. United Airlines, Inc. v. FERC*, 2016 WL 3568136, at *4 (D.C. Cir. July 1, 2016).

In short, DOL's failure to assess meaningfully the extant regulatory programs renders the Rule arbitrary and capricious and requires vacatur.  *See, e.g.*, *Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166, 179 (D.C. Cir. 2010).

## II.    THE REMAINING FACTORS SUBSTANTIALLY FAVOR AN INJUNCTION

### A.    Appellants Will Be Irreparably Injured Absent An Injunction

For reasons set forth fully by the Chamber Appellants, an injunction pending appeal is necessary to avert serious and irreparable harm to Appellants' members—life insurance companies and insurance agents who market and sell annuities to retirement savers.  Appellants submit two additional points

*First*, Appellants' members will suffer certain and irreparable harm because application of the Rule will substantially burden their protected commercial speech, as explained above.  Upon the applicability date, Appellants' members will be deemed "fiduciaries" subject to new and extensive regulation as a result of

ordinary sales speech. And agents and brokers selling fixed indexed or variable annuities, particularly those selling an insurer's own "proprietary" products to retail investors, will be subject to even more extensive burdens under this regulatory regime, which discriminates based on content, speaker, and listener.

These constitutional injuries are irreparable as a matter of law. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Fifth Circuit has "repeatedly" applied that principle in finding that First Amendment burdens "establish[] irreparable harm." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 & n.7 (5th Cir. 2013) (collecting authorities). "Once First Amendment rights have been chilled, there is no effective remedy, and it is well established in the Fifth Circuit that infringement of First Amendment rights, standing alone, constitutes irreparable harm." *Assoc. Builders & Contractors of Se. Tex. v. Rung*, 2016 WL 8188655, at *14 (E.D. Tex. Oct. 24, 2016); *see also Nat'l Fed'n of Indep. Bus. v. Perez*, 2016 WL 3766121, at *39 (N.D. Tex. June 27, 2016) (applying principle to DOL rule).

*Second*, and independently, Appellants' members will face ongoing, substantial, and unrecoverable compliance costs absent an injunction pending appeal, *see, e.g.*, Chamber Mot. 21-26—injuries that, as the Fifth Circuit has recently made clear, are irreparable and justify the entry of injunctive relief. *See*

*Texas v. EPA*, 829 F.3d 405, 433-434 (5th Cir. 2016). Although it greatly underestimated those costs, DOL itself found that application of the Rule would result in *annual* compliance costs for insurers ranging from approximately $87 million to more than half a billion dollars. ACLI App. 145. Overall, the Rule will inflict billions of dollars in compliance costs on regulated industries, as the Chamber Appellants explain. Those injuries are especially significant because, if the Rule is invalidated, Appellants' members may face two seismic operational changes: overhauling their businesses to comply with the applicability date and then (where possible) changing course again once the Rule is vacated.

Such economic injuries are, by definition, irreparable because "[n]o mechanism … exists for [Appellants] to recover the compliance costs they will incur if the [challenged] Rule is invalidated on the merits." *Texas v. EPA*, 829 F.3d at 434; *see Am. Health Care Ass'n v. Burwell*, 2016 WL 6585295, at *15 (N.D. Miss. Nov. 7, 2016); *Nevada v. DOL*, 2016 WL 6879615, at *7 (E.D. Tex. Nov. 22, 2016). Indeed, "under Fifth Circuit law" substantial "compliance costs"—such as those imposed by the Rule—that "cannot be recovered later from the government if the Rule is invalidated" "are irreparable." *Dialysis Patient Citizens v. Burwell*, 2017 WL 365271, at *6 (E.D. Tex. Jan. 25, 2017).[4]

---

[4]    As the Chamber Appellants explain, *see* Chamber Mot. 25 n.48, 27, the district court was wrong to believe that an enforcement memorandum recently

### B.    The Balance Of Equities Favors Preserving The Status Quo

An injunction pending appeal is also warranted because the threatened injury to Appellants' members outweighs the harm to DOL.  As described above and by the Chamber Appellants, the harm to Appellants' members from application of the Rule would be substantial and irreparable.  DOL would suffer no comparable harm were the Rule—which "sharply alters the pre-existing status quo" that has governed for decades—delayed while the Court resolves Appellants' claims.  *See Am. Health Care Ass'n*, 2016 WL 6585295, at *18.  Indeed, given that the President has ordered "an updated economic and legal analysis concerning the likely impact" of the Rule, Chamber App. 621, an injunction pending appeal may well benefit DOL, permitting DOL's reevaluation to occur in a full and orderly fashion.

### C.    The Public Interest Favors An Injunction

An injunction would also advance the public interest.  It is not in the public interest for the life insurance industry to be compelled to make substantial operational and business changes to comply with the Rule's applicability date on April 10—changes that will inevitably engender consumer confusion and large up-front transitional costs—only to have the Rule later vacated by this Court.  Upending the status quo now creates a grave risk that insurers, agents, and brokers,

---

issued by DOL or the possibility of other administrative relief by DOL would address the irreparable harm that will result from the Rule's applicability date.

as well as "retirement investors and other stakeholders," will all "face two major changes in the regulatory environment rather than one," Chamber App. 622, leading to additional operational difficulties, costs, and consumer confusion.

Furthermore, there is a strong public interest in ensuring that "government agencies be enjoined from acting in a manner contrary to law."  PI Order 30, *Assoc. Builders & Contractors of Se. Tex. v. Rung*, No. 1:16-cv-425-MAC (E.D. Tex. Oct. 24, 2016), ECF No. 22.  For that reason, courts in this Circuit regularly grant relief to preserve the status quo pending judicial review of agency rules.  *See, e.g.*, *Nevada*, 2016 WL 6879615, at *8; *Am. Health Care Ass'n*, 2016 WL 6585295, at *18; *Texas v. United States*, 2016 WL 4426495, at *17 (N.D. Tex. Aug. 21, 2016).  Given the serious questions regarding the Rule's legality, this Court should do the same here.

## CONCLUSION

Appellants urge the Court to issue an injunction staying the Rule's April 10 applicability date and barring enforcement pending appeal.

Respectfully submitted,

/s/  David W. Ogden

ANDREA J. ROBINSON                    DAVID W. OGDEN
WILMER CUTLER PICKERING                   *Counsel of Record*
   HALE AND DORR LLP                  KELLY P. DUNBAR
60 State Street                      ARI HOLTZBLATT
Boston, MA  02109                    KEVIN M. LAMB
                                     WILMER CUTLER PICKERING
MICHAEL A. YANOF                        HALE AND DORR LLP
THOMPSON COE COUSINS & IRONS, LLP    1875 Pennsylvania Avenue, N.W.
700 North Pearl Street               Washington, D.C.  20006
25th Floor – Plaza of the Americas   (202) 663-6000
Dallas, TX  75201

*Counsel for American Council of Life
Insurers, National Association of
Insurance and Financial Advisors,
National Association of Insurance and
Financial Advisors-Texas, National
Association of Insurance and Financial
Advisors-Amarillo, National Association
of Insurance and Financial Advisors-
Dallas, National Association of
Insurance and Financial Advisors-Fort
Worth, National Association of
Insurance and Financial Advisor-Great
Southwest, and National Association of
Insurance and Financial Advisors-
Wichita Falls*

March 22, 2017

## CERTIFICATE OF CONFERENCE

In accordance with Fifth Circuit Rules 27.3 and 27.4, the undersigned

hereby certifies that on March 22, 2017, Kelly Dunbar, counsel for Appellants,

conferred with counsel for Defendants-Appellees, Michael Shih, who

communicated that the government opposes this motion for an injunction, and with

counsel for Co-Plaintiffs-Appellants, Joseph Guerra and Eugene Scalia, who

communicated that they concur in the relief requested.


/s/  David W. Ogden
DAVID W. OGDEN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000

March 22, 2017

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that:

1.    Exclusive of the exempted portions of the document, as provided in Fed. R. App. P. 32(f), the document contains 5,185 words.

2.    The document has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/  David W. Ogden
DAVID W. OGDEN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000

March 22, 2017

## CERTIFICATE OF FACTS

Pursuant to Fifth Circuit Rule 27.3, I hereby certify that the facts supporting this motion are true and complete.

/s/  David W. Ogden
DAVID W. OGDEN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000

March 22, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2017, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which will send a notice of filing to all counsel of record.

/s/  David W. Ogden
DAVID W. OGDEN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 663-6000