IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA, et al.,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF
LABOR, et al.,

Defendants-Appellees.

No. 17-10238

**RESPONSE TO APPELLANTS' EMERGENCY MOTIONS FOR
INJUNCTION PENDING APPEAL**

This appeal concerns a package of final agency actions—known as the "fiduciary rule"—issued by the Labor Department to address conflicts of interest in the market for retirement-investment advice. The fiduciary rule modifies regulations implementing the Employee Retirement Income Security Act ("ERISA") and the Internal Revenue Code ("Code") by updating the regulatory definition of fiduciary investment advice. Plaintiffs challenged the rule on statutory and constitutional grounds, but the district court, like every other court to hear similar challenges, entered judgment for the Department. Some aspects of the rule are currently scheduled to apply to regulated entities on April 10, 2017; other parts, including certain exemption provisions, will not apply under the current schedule until January 1, 2018.

In February 2017, the President directed the Secretary of Labor to examine the fiduciary rule and to "prepare an updated economic and legal analysis" of its terms. 82 Fed. Reg. 9675 (Feb. 7, 2017). The results of this updated analysis could, depending on the outcome, lead the Labor Department to revise or rescind the rule. Consistent with the Administrative Procedure Act ("APA"), the Department began implementing the President's directive by soliciting public comment on elements of that analysis in a notice of proposed rulemaking. The Department also proposed extending the April 10 applicability date by sixty days and asked for comment on whether the extension should be longer. That notice-and-comment process remains

pending.[1]  To mitigate any prejudice to regulated entities in the meantime, the agencies tasked with enforcing the rule—the Labor and Treasury Departments— issued parallel nonenforcement policies.  Under these policies, the Departments will not enforce the rule should it become applicable before a delay can be implemented. If the Labor Department eventually decides against delaying the rule, the policies give regulated entities a reasonable period of time to bring their operations into compliance.

Plaintiffs ask this Court to preempt the ongoing notice-and-comment process by entering an injunction pending appeal.  But they are not entitled to the extraordinary relief they seek.  Plaintiffs' arguments on the merits contradict the plain text of ERISA, which vests the Labor Department with broad authority to classify individuals as "fiduciaries" and to regulate their conduct accordingly.  Plaintiffs' allegations of irreparable harm lack force in light of the recently issued nonenforcement policies, which substantially reduce the risk to plaintiffs while the Department considers whether and for how long the fiduciary rule's applicability date should be extended.  And the balance of equities weighs decisively against interrupting the agency's administrative process to vindicate the preferences of these disappointed litigants.

---

[1] A draft final rule has been transmitted to the Office of Management and Budget for review.

2

## STATEMENT

1.  Congress enacted ERISA to establish "standards . . . assuring the equitable character" and "financial soundness" of retirement-benefit plans.  29 U.S.C. § 1001(a).  Title I of the statute, 29 U.S.C. § 1001 *et seq.*, governs employer-sponsored retirement plans.  Fiduciaries to such "Title I plans" must behave in accordance with the duties of loyalty and prudence.  *Id.* § 1104(a).  Title II, codified as amended in the Code at 26 U.S.C. §§ 401-415 & 4972-4975, contains requirements that retirement plans must meet in order to receive tax benefits.  Title II has requirements that apply not only to tax-qualified Title I plans but also to individual-retirement accounts ("IRAs") and other tax-favored savings plans.  *Id.* § 4975(e)(1)(B)-(F).  Title II does not impose standards of prudence and loyalty on certain types of fiduciaries.  Both titles, however, contain provisions prohibiting a fiduciary from engaging in certain conflicted transactions, such as "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1); *see* 26 U.S.C. § 4975(c)(1)(E).

The Labor Department has discretion to issue exemptions from the prohibited-transaction provision of both titles if the exemption is "administratively feasible," "in the interests of the plan and of its participants and beneficiaries," and "protective of the rights of participants and beneficiaries of such plan."  29 U.S.C. § 1108(a); *see* 26 U.S.C. § 4975(c)(2); Reorg. Plan No. 4 of 1978 § 102(a) (codified at 5 U.S.C. App. 1) (transferring the Treasury Department's authority to issue exemptions under § 4975 to the Secretary of Labor).  Finally, both titles contain identical definitions of "fiduciary."

3

A person is a "fiduciary" with respect to a plan if he "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii); 26 U.S.C. § 4975(e)(3). This definition is not limited to the common-law understanding of the term, reflecting Congress's desire to "expand[] the universe of persons subject to fiduciary duties." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

At first, the Labor Department's regulations construed "fiduciary" with respect to rendering investment advice narrowly. Its original interpretation, issued in 1975, set forth a five-part test under which a person would be deemed a fiduciary only if, among other things, he rendered investment advice to a retirement investor "on a regular basis." 29 C.F.R. § 2510.3-21(c)(1)(B) (2015).

2. The Labor Department promulgated the fiduciary rule to update its original interpretation. In the intervening decades, the Department explained, "individuals, rather than large employers and professional money managers, have become increasingly responsible for managing retirement assets as IRAs and participant-directed plans, such as 401(k) plans, have supplanted defined-benefit pensions." 81 Fed. Reg. 20946, 20954 (Apr. 8, 2016).

The narrow five-part test allows investment advisers in this changed marketplace to be compensated for advice that can "play a central role in shaping plan and IRA investments" without the fiduciary safeguards Congress intended to apply to

4

individuals with "such influence and responsibility." 81 Fed. Reg. at 20955. In response to this concern, the Labor Department promulgated a new interpretation of "fiduciary." Under this interpretation, an individual "renders investment advice" whenever he is compensated in connection with a "recommendation as to the advisability of" buying, selling, or managing "investment property." 29 C.F.R. § 2510.3-21(a). A "recommendation" is a "communication that . . . would reasonably be viewed as a suggestion that the advice recipient engage in or refrain from taking a particular course of action." *Id.* § 2510.3-21(b)(1).[2] This recommendation must be made under at least one of three circumstances: when the recommender represents himself as a fiduciary, when his advice is "specifically directed" at the recipient, or when there exists an "understanding that the advice is based on" the recipient's "particular investment needs." *Id.* § 2510.3-21(a).

To provide relief to the newly expanded universe of fiduciaries from application of ERISA's prohibited-transaction provisions, the Department amended and created certain administrative exemptions. In particular, the Department created the Best Interest Contract Exemption, which permits fiduciary investment advisers to continue receiving commissions and other forms of compensation that would otherwise be prohibited so long as they comply with the exemption's conditions, which include following Impartial Conduct Standards that instantiate "fundamental

---

[2] This language was designed to mirror guidance issued by the Financial Industry Regulatory Authority. *See* 81 Fed. Reg. at 20971-72.

obligations of fair dealing and fiduciary conduct." 81 Fed. Reg. 21002, 21007 (Apr. 8, 2016). Fiduciaries to IRAs must comply with an additional condition: They must conclude a written contract with their customers that commits them to adhering to these standards and that must contain certain other terms. *Id.* at 21022. Any suit to enforce such a "best-interest contract" will arise under state law, and may be brought only by the parties to the contract.

The Labor Department published the fiduciary rule on April 8, 2016. The rule took effect on June 7, 2016. Under the current schedule, the rule will not impose its requirements on regulated entities until April 10, 2017. The current schedule further delays the full applicability of certain conditions to the Best Interest Contract Exemption—including the best-interest-contract requirement—until January 1, 2018. Between April 10, 2017, and January 1, 2018, investment advisers may obtain relief from the prohibited-transaction provisions by complying with less-stringent "transitional" conditions. 81 Fed. Reg. at 21069-70, 21084-85.

In February 2017, the President directed the Secretary of Labor to "examine the Fiduciary Duty Rule" and to "prepare an updated economic and legal analysis" of its requirements. 82 Fed. Reg. at 9675. If the Secretary's updated analysis indicates that the fiduciary rule should be modified or repealed, the Secretary "shall publish for notice and comment a proposed rule rescinding or revising the Rule, as appropriate and as consistent with law." *Id.*

The Labor Department issued a notice of proposed rulemaking in response to this directive from the President, as the APA requires.  The notice solicited comment on many aspects of the rule.  82 Fed. Reg. 12319, 12323 (Mar. 2, 2017).  Recognizing that the results of its updated analysis could "unnecessarily disrupt the marketplace" should the Department elect to rescind or revise the rule after the rule becomes applicable, the notice also proposed a sixty-day delay of the April 10 applicability date. *Id.* at 12320.  The notice sought the public's views on "whether a different delay period would best serve the interests of investors and the industry." *Id.* at 12321.

To protect industry participants from the possibility that the Labor Department would not issue a delay, or would not do so prior to the applicability date, the Department announced a temporary nonenforcement policy. *See* App. 630-32.[3] Under that policy, the Department will focus its attention on helping regulated entities comply with the rule should it eventually become applicable in its current form.  The nonenforcement policy covers any gap period in which the rule may become applicable before a delay is implemented.  App. 631.  Should the Department decide against delaying the rule, the policy provides regulated entities with a reasonable period of time to come into compliance.  App. 631-32.  The policy states that, "[t]o the extent that circumstances surrounding the [delay] decision . . . give rise to the need for other temporary relief," including retroactive relief from prohibited transactions,

---

[3] All appendix citations refer to the appendix submitted by the Chamber of Commerce plaintiffs.

the Department "will consider taking such additional steps as necessary." App. 632. The Department of Treasury, which under Title II of ERISA subjects noncompliant fiduciaries to an excise tax, announced a parallel nonenforcement policy on March 27, 2017. *See* Add. A1-A3.

3. Plaintiffs asked the district court to vacate the fiduciary rule, arguing that it violates the Administrative Procedure Act and the Constitution. They did not seek to have the rule preliminarily enjoined. The district court entered summary judgment for the government on all of plaintiffs' claims. App. 123-205.[4]

The district court denied plaintiffs' subsequent motion to enjoin the rule pending appeal. App. 357. With respect to the merits, the court noted that it had "already found Plaintiffs' position on the merits unpersuasive." App. 360. With respect to irreparable injury, the court ruled that plaintiffs' allegations of harm are largely predicated on "compliance costs before and throughout this litigation." App. 361. Such injuries "cannot constitute the irreparable harm Plaintiffs must show" under the "inherently prospective" test for obtaining injunctive relief. *Id.* As for plaintiffs' anticipated future harms, the court emphasized that such harms will be

---

[4] Every court to consider the legality of the fiduciary rule has upheld it. *See Market Synergy Grp. v. U.S. Dep't of Labor*, No. 16-4083, 2017 WL 661592 (D. Kan. Feb. 17, 2017); *Nat'l Ass'n of Fixed Annuities v. Perez*, No. 16-1035, 2016 WL 6573480 (D.D.C. Nov. 4, 2016). In every case, the courts also declined to enter an injunction *pendente lite. See* Order, *Market Synergy Grp.*, 2016 WL 6948061 (D. Kan. Nov. 28, 2017); Order, *Nat'l Ass'n of Fixed Annuities*, 2016 WL 6902113 (D.D.C. Nov. 23, 2016); Order, *Nat'l Ass'n of Fixed Annuities v. Perez*, No. 16-5345 (D.C. Cir. Dec. 15, 2016).

mitigated by the Labor Department's proposed delay of the rule and its recently issued nonenforcement policy. *Id.* Indeed, "Plaintiffs' own statements suggest the circumstances of the new rule[] . . . make injunctive relief unnecessary." App. 362. Finally, with respect to the balance of equities, the court explained that the Department—at the President's instruction—is currently reassessing the way in which the rule "balanc[es] costs and consumer access against conflicted advice to retirement investors." App. 363-64. The court declined to pretermit the agency's "ability to apply its expertise" to that "technical and complex regulatory problem[]." App. 363 (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)).

## ARGUMENT

Injunctions pending appeal are "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party requesting this "extraordinary" form of relief must make a "clear showing" along four familiar lines: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20-24. Plaintiffs have failed to meet this standard.

1. The district court entered summary judgment against plaintiffs on all of their statutory and constitutional claims. Their motions discuss only three of their claims, none of which is likely to succeed on the merits.

Notably, the Chamber plaintiffs did not argue before the district court that they were "substantially likely to succeed on the merits" of their lawsuit, as the traditional

standard requires.  App. 301-02.  They instead invoked a more lenient standard for an injunction pending appeal, turning on whether the movant has raised "serious legal questions" about the merits of its claims.  *Id.*  This standard does not apply to plaintiffs' motions because it comes into play only if each of the other three factors clearly favors granting the injunction—and those other factors here do not, as the district court concluded.  App. 360 n.6 (citing *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. 1981)).  Both the Chamber plaintiffs and the ACLI plaintiffs now invoke before this Court the more lenient standard solely in the alternative.  *See* Chamber Mot. 20; ACLI Mot. 9.  They are not entitled to an injunction under either standard.

a.  Plaintiffs argue (Chamber Mot. 12-18) that the Labor Department lacks authority under ERISA to adopt its revised interpretation of "fiduciary."  The district court rejected this argument under the familiar framework of *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

At step one, the district court correctly concluded that the "plain language of ERISA does not foreclose" the Department's interpretation.  App. 139.  ERISA defines "fiduciary," in relevant part, as anyone who "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of [a] plan."  29 U.S.C. § 1002(21)(A)(ii); 26 U.S.C. § 4975(e)(3).  The revised interpretation implements this functional definition by classifying as a fiduciary any person who makes a "recommendation as to the advisability of" buying, selling, or managing "investment property" in three circumstances, including when advice is

rendered on the "understanding that the advice is based on the particular investment needs of the advice recipient." 29 C.F.R. § 2510.3-21(a). This interpretation mirrors the ordinary meaning of the phrase "investment advice" and is therefore consistent with the statute. App. 139.

At step two, the court concluded that the Department's interpretation is "reasonable." App. 146. In light of changes to the retirement-investment market, including "the proliferation of participant-directed 401(k) plans, investments in IRAs, and rollovers of plan assets to IRAs," "[a]n interpretation covering such transactions" comports with "the statute's text and its broad remedial purpose." *Id.*

Plaintiffs' responses are unconvincing. They contend (Chamber Mot. 16-18) that the Labor Department's interpretation of ERISA does not merit *Chevron* deference because Congress did not intend to allow the Department to issue regulations with economic significance on this scale. But the breadth of a rule does not render it unreasonable if the rule was promulgated under an equally broad delegation of regulatory authority. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977); *AFL-CIO v. Donovan*, 757 F.2d 330, 341, 343 (D.C. Cir. 1985). Here, the Department has expansive power to define the statutory term "fiduciary," *see* 29 U.S.C. § 1135, and to craft administrative exemptions, *see* 26 U.S.C. § 4975(c)(2); 29 U.S.C. § 1108(a). For more than forty years, the Department has exercised this authority to "define[] what it means to render investment advice, [to] regulate[] investment advice . . . , and [to] grant[] conditional exemptions from conflicted transactions." App. 148. Plaintiffs'

contrary position ignores ERISA's text and the Department's long history of regulation in this field.

Plaintiffs assert (Chamber Mot. 12-16) that individuals who render investment advice in the course of selling insurance products are "salespersons" who are not fiduciaries at common law and who therefore cannot be deemed fiduciaries under ERISA.  But because Congress departed from the common law of trusts by "expanding the universe of persons subject to fiduciary duties" when defining fiduciary in ERISA, *see Mertens*, 508 U.S. at 262, this claim fails even assuming *arguendo* that insurance salespersons can never be common-law fiduciaries.  Indeed, Congress enacted ERISA because it "determin[ed] that the common law of trusts did not offer completely satisfactory protection" to investors.  *Varity Corp. v. Howe*, 516 U.S. 489, 496-97 (1996).

Plaintiffs suggest (Chamber Mot. 19) that insurance salespersons do not "render[] investment advice for a fee or other compensation," as required to be a fiduciary under ERISA, because they are paid not for the advice they give but for the products they sell.  But the statutory text does not require compensation to be paid solely—or even principally—for investment advice; nor does it turn on whether the customer believes he is paying for investment advice.  What matters is whether the adviser who gives advice is doing so to obtain a fee.  And, as plaintiff ACLI acknowledges, sales commissions are often paid, at least in part, for the investment advice given in the course of selling investment products.  App. 143 & n.61.  In any

event, the rule clarifies that a person does not become an "investment advice fiduciary merely by reason of selling a[n] . . . investment property to an interested buyer." 81 Fed. Reg. at 20984. Only those transactions that include "an investment advice component" are covered by the fiduciary rule. *Id.*[5]

Nor is it significant that the Labor Department excluded certain transactions involving ERISA plans with at least $50 million in assets from its definition of "investment advice." The Department reasonably determined that, in some circumstances, investment advice rendered to such plans can take place "at arm's length"—for instance, when "neither party expects that recommendations will necessarily be based on the buyer's best interests, or that the buyer will rely on them as such." 81 Fed. Reg. at 20980. This exclusion, which comports with ERISA's remedial purposes, in no way undermines the Department's recognition that advice rendered in other contexts may qualify advisers for fiduciary status under ERISA.

The ACLI plaintiffs further argue (ACLI Mot. 16-19) that the Department extended the fiduciary rule to the sale of certain annuities without adequately considering certain factors. But the district court was "unpersuaded" by plaintiffs' allegation that, on the record before the agency, "the new rules reduce consumer

---

[5] Plaintiffs derive no support from *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society*, 841 F.2d 658 (5th Cir. 1988). That decision declined to treat an insurance company as a fiduciary under the Labor Department's narrow five-part test, which the fiduciary rule supersedes. *See id.* at 664. The Court did not hold that ERISA's reference to "a fee or other compensation" excludes sales commissions.

access to" certain annuity products. App. 167-71, 187 n.200. And, contrary to plaintiffs' assertions, the Department "specifically" addressed whether existing regulations were adequate to protect investors. App. 172 n.139.

b. Plaintiffs argue (Chamber Mot. 17-20) that the Department cannot require fiduciaries to IRAs, as a condition of qualifying for the Best Interest Contract Exemption, to conclude written contracts with investors. Plaintiffs believe that this condition creates a private cause of action in violation of *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

The district court properly concluded that the fiduciary rule does no such thing. Individuals who sell insurance products held in IRAs are already subject to breach-of-contract lawsuits in state courts. App. 160. And any suit to enforce the terms of a best-interest contract would arise under, and be governed by, a state's existing laws. *Id.* Nor are such conditions unusual. For example, the Labor Department has long required "qualified professional asset managers" to acknowledge fiduciary status in a "written management agreement" as a condition of qualifying for a different administrative exemption, exposing them to potential liability as a result. 49 Fed. Reg. 9494, 9503 (Mar. 13, 1984). The new exemption is thus consistent with *Sandoval.*

Plaintiffs' reliance on *Astra USA, Inc. v. Santa Clara County.*, 563 U.S. 110 (2011), is misplaced. That case involved a statute requiring the federal government to conclude contracts with regulated entities that "incorporate[d]" the relevant "statutory obligations." 563 U.S. at 119 & n.4. The Court held that third-party beneficiaries

cannot sue to enforce these contractual terms because such suits would be, "in essence," "suit[s] to enforce the statute itself." *Id.* at 119. This holding has no bearing on this case, which involves not third-party suits but suits between contracting parties. Thus, *Astra* does not preclude agencies from conditioning a regulatory exemption on the terms of a contract between a regulated entity and a third party. Indeed, *Astra* declined to reach the similar (but still distinct) question of whether an "agency may authorize third-party suits to enforce a Government contract." *Id.* at 119 n.4.

c. The ACLI Plaintiffs contend (ACLI Mot. 10-12) that the fiduciary rule violates the First Amendment. The district court rejected this argument on several grounds. At the threshold, plaintiffs forfeited the argument by failing to raise it during the initial notice-and-comment period. *See BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 828-29 (5th Cir. 2003). The forfeiture doctrine applies with equal force to constitutional claims like this one. *See, e.g.*, *Nebraska v. EPA*, 331 F.3d 995, 997-98 (D.C. Cir. 2003) (holding that plaintiffs forfeited their Commerce Clause and Tenth Amendment challenges to a rule). The D.C. Circuit's decision in *Weaver v. USIA*, 87 F.3d 1429 (D.C. Cir. 1996), says nothing to the contrary. *Weaver*—which arose in the context of exhaustion of administrative remedies, not in the context of notice-and-comment rulemaking—holds merely that a plaintiff must exhaust constitutional claims when a process exists for that plaintiff to exhaust. *Id.* at 1434.

Plaintiffs' argument fails on the merits as well. As the district court explained, the fiduciary rule regulates professional conduct, not speech. A regulation governing

"the practice of a profession, even though that regulation may have an incidental impact on speech, does not violate the Constitution." *See Serafine v. Branaman*, 810 F.3d 354, 359 (5th Cir. 2016). To the extent the fiduciary rule regulates speech at all, "the only speech" regulated "is misleading advice." App. 201. "Plaintiffs and their members may speak freely, so long as they recommend products that are in a consumer's best interest." *Id.* "If an investment adviser recommends a product" as appropriate for an investor "merely because the product makes the most money for the adviser . . . despite the product not being in the investor's best interest," that adviser's speech is "more likely to deceive" consumers "than to inform" them. *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563, 567 (1980)). The First Amendment does not bar the Department from regulating speech of this sort. *See Cent. Hudson*, 447 U.S. at 563-64 (listing cases).

2. Plaintiffs' motions should be denied for another, independent reason: Plaintiffs cannot show that they or their members are likely to suffer irreparable harm in the absence of an injunction pending appeal. *See United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). Plaintiffs identify four allegedly irreparable injuries they say they will suffer if the fiduciary rule takes effect: the monetary cost of ongoing and upcoming compliance efforts, the operational cost of restructuring mechanisms of sale for many industry participants, the personal cost to insurance agents who might exit the market as a result of the rule, and the reputational cost of communicating the rule's requirements to customers only to (potentially) reverse them down the line. *See*

16

Chamber Mot. 21-26; ACLI Mot. 19-21.  None of these injuries is sufficient to merit injunctive relief pending appeal.

As an initial matter, plaintiffs' assertions of injury elide the distinction between costs *already* incurred and costs *to be* incurred.  Only the latter can justify prospective injunctive relief.  *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).  But plaintiffs do not meaningfully distinguish between injuries they have already sustained and injuries they anticipate sustaining.  Indeed, plaintiffs' own declarant acknowledges that the industry has already done much preparing to comply, without explaining how much remains to be done.  App. 361; *see* App. 212 ¶ 7.

Plaintiffs could not prevail even assuming they have adequately specified their anticipated harms because, as the district court ruled, "whether the industry will incur the costs Plaintiffs suggest is speculative."  App. 362.  None of the fiduciary rule's provisions will take effect until April 10, 2017 at the earliest.  And the Labor Department has issued a notice of proposed rulemaking that proposes to delay the April 10 applicability date by sixty days.  This delay, if adopted, would defer the future harms plaintiffs raise.  The Department "intends to issue a decision on [that] proposal" before April 10, *see* App. 630, and has transmitted a draft final rule to the Office of Management and Budget for review.

Plaintiffs respond (Chamber Mot. 25) that a sixty-day delay is too short to protect their interests.  But the Labor Department solicited "comments regarding whether a different delay period would best serve the interests of investors and the

17

industry."  82 Fed. Reg. at 12321; *see* https://www.dol.gov/agencies/ebsa/laws-and

-regulations/rules-and-regulations/public-comments/1210-AB79 (select "+ Expand

All").  Many commenters—including several plaintiffs—urged the Department to

adopt an even longer delay period, and the Department is currently considering those

views.  *E.g.*, Comment of the Chamber of Commerce, cmt. no. 864, at 2 (Mar. 13,

2017); Comment of ACLI, cmt. no. 849, at 1 (Mar. 13, 2017).  Because a meaningful

delay of some of the fiduciary rule's requirements beyond the proposed sixty-day

period is a realistic possibility, plaintiffs have failed to demonstrate injury sufficient to

support the extraordinary relief they seek.

Plaintiffs maintain (Chamber Mot. 25) that the ongoing rulemaking does not

eliminate the need for regulated entities to make preparations to comply with the rule

before April 10.  They note that the Labor Department might not delay the

applicability date until after April 10—and that the Department might well adopt no

delay at all.  But this argument is in tension with their declarant's statement that

industry participants intend to wait until the rule becomes applicable before

"begin[ning] in earnest implementing the [necessary] infrastructure and making the

[necessary] changes."  App. 213 ¶ 7.  This statement implies that the industry has

concluded that whatever implementation remains to be done can be accomplished in

a short period of time.

The nonenforcement policies issued by the Labor and Treasury Departments

further illustrate the speculative nature of plaintiffs' anticipatory-compliance

argument.  If the Labor Department fails to decide before April 10 whether to delay the fiduciary rule, a regulated entity will not be penalized for violating the rule during the period before the agency announces its decision.  And if the agency decides against delaying the rule, regulated entities will benefit from a grace period—likely to be at least thirty days—in which to bring their activities into compliance.  These policies mean that plaintiffs will suffer little harm from maintaining their wait-and-see approach until the Labor Department issues a final decision.[6]

The ACLI plaintiffs separately argue (ACLI Mot. 19-20) that the alleged loss of their First Amendment freedoms constitutes irreparable harm.  But "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury."  *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016).  Plaintiffs must demonstrate that "First Amendment interests are either threatened or in fact being impaired at the time relief is sought."  *Id.* at 227-28 (citations and internal quotation marks omitted).  Because the fiduciary rule governs only professional conduct, and because "the only speech the rule[] even arguably regulate[s] is misleading advice," App. 201, the ACLI plaintiffs have failed to carry their burden.

---

[6] Plaintiffs assert (Chamber Mot. 25 n.48), in conclusory fashion, that private litigants may "try" to enforce the fiduciary rule against them.  But plaintiffs at no point explain how the rule would increase the risk of private enforcement during ongoing rulemaking despite agency nonenforcement policies.  Moreover, as noted, the Labor Department has the authority to grant affected industry members retroactive relief from prohibited transactions, and has indicated that it will consider granting such relief if necessary.  App. 632.

3.  Finally, the public interest and the balance of equities weigh decisively against preempting the Labor Department's ongoing rulemaking by entering an injunction pending appeal.  As noted, plaintiffs have not persuasively explained why their interests will be harmed should this Court permit the notice-and-comment process to run its course.  *See supra*, pp. 17-19.  And the interests on the other side of the scale are substantial.  The notice-and-comment process is "generally presumed to serve the public interest," *see Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012), because it allows an agency to "apply its expertise" to complicated questions such as those at issue in this case, *see FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980).  Thus, courts should "take no action calculated to interfere seriously with an agency's ability . . . to solve those technical and complex regulatory problems which have been entrusted to it."  *Texas v. Seatrain Int'l S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

The importance of this principle is amplified when, as here, Congress delegated to the Labor Department authority to decide against whom and to what degree ERISA may be enforced—and when, as here, the President directed the Secretary of Labor to consider, with input from all interested parties, whether the fiduciary rule "may adversely affect the ability of Americans to gain access to retirement information and financial advice."  82 Fed. Reg. at 9675.  Enjoining this ongoing process would prevent the Department from determining the fiduciary rule's future "in the first instance."  *See Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013).  And it would deprive the public of the benefit of the process the agency initiated to ensure

that any delay of the fiduciary rule serves not only plaintiffs' interests but the interests of the public writ large, including the retirement investors whose interests the Department is charged with protecting.

4.   Plaintiffs have requested expedited briefing as an alternative to injunctive relief.  The government does not believe expedition is advisable in light of the Department's ongoing rulemaking, which could result in modifications to both the rule's applicability date and the rule's substantive provisions.

## CONCLUSION

For these reasons, this Court should deny plaintiffs' motions for an injunction pending appeal and, in the alternative, for expedited briefing.

Respectfully submitted,

*Of Counsel:*

NICHOLAS C. GEALE
 *Acting Solicitor*

G. WILLIAM SCOTT
 *Associate Solicitor*

EDWARD D. SIEGER
 *Senior Attorney*

THOMAS TSO
 *Counsel for Appellate and Special*
 *Litigation*

MEGAN HANSEN
 *Attorney for Regulations*
 *Office of the Solicitor*
 *U.S. Department of Labor*

JOYCE R. BRANDA
 *Deputy Assistant Attorney General*

MICHAEL S. RAAB

 /s/ Michael Shih
MICHAEL SHIH
(202) 353-6880
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7268*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, NW*
 *Washington, DC 20530*

*Counsel for Appellees*

MARCH 2017

ADDENDUM

## TABLE OF CONTENTS

**Page**

1. U.S. Department of the Treasury, Announcement 2017-4,
   Non-Applicability of Excise Taxes Under Section 4975
   To Conform with DOL Temporary Enforcement Policy
   on Fiduciary Duty Rule (Mar. 27, 2017) ..................................................................... A1

**Non-Applicability of Excise Taxes Under Section 4975 To Conform With DOL Temporary Enforcement Policy on Fiduciary Duty Rule**

**Announcement 2017–4**

This announcement provides relief from certain excise taxes under § 4975 of the Internal Revenue Code (Code), and any related reporting requirements, to conform to the temporary enforcement policy described by the Department of Labor (DOL) in Field Assistance Bulletin (FAB) 2017-01 with respect to the final fiduciary duty rule published in the Federal Register on April 8, 2016 (81 F.R. 20946), entitled "Definition of the Term 'Fiduciary'; Conflict of Interest Rule – Retirement Investment Advice" and related prohibited transaction exemptions, including the Best Interest Contract Exemption (BIC Exemption), the Class Exemption for Principal Transactions in Certain Assets Between Investment Advice Fiduciaries and Employee Benefit Plans and IRAs (Principal Transactions Exemption), and certain amended prohibited transaction exemptions (collectively, PTEs).

**BACKGROUND**

Section 4975(a) imposes an excise tax on each prohibited transaction equal to 15 percent of the amount involved with respect to the prohibited transaction for each year (or part thereof) in the taxable period. Section 4975(b) increases the tax to 100 percent of the amount involved in any cases in which an initial tax is imposed under § 4975(a) on a prohibited transaction and the transaction is not corrected within the taxable period. In each case, the tax is imposed on any disqualified person who participates in the prohibited transaction (other than a fiduciary acting only as such). Section 4975(c) provides a definition of a prohibited transaction and authorizes the Department of the Treasury (Treasury Department) to grant administrative exemptions from the prohibited transaction provisions in the Code. Section 4975(c)(1)(A) through (D) prohibits the direct or indirect sale, exchange, leasing of property, or loan of money, or other extension of credit, between a plan (including an individual retirement account or individual retirement annuity (IRA)) and a disqualified person, or the direct or indirect transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan. Section 4975(c)(1)(E) and (F) prohibits fiduciaries from dealing with the income or assets of a plan in their own interest or for their own account or receiving any consideration for their own personal account from any party dealing with the plan in connection with a transaction involving the income or assets of the plan. Section 4975(d) provides a series of exemptions from the prohibitions in § 4975(c), and § 4975(e) provides a series of definitions, including the definition of a disqualified person to whom the tax may apply. Section 4975(e)(2)(A) provides that a disqualified person includes a fiduciary.

Sections 406 and 408 of the Employee Retirement Income Security Act of 1974, Public Law 93-406 (88 Stat. 829 (1974)), as amended (ERISA), contain provisions on prohibited transactions that are substantially similar to the provisions of § 4975 of the Code, although the ERISA provisions prohibit the fiduciary from engaging in the transactions and provide for civil liability and remedies rather than imposing an excise tax. The DOL is the agency responsible

for interpreting and enforcing the ERISA provisions as they apply to employee benefit plans. ERISA § 408(a) includes an authorization for the Secretary of Labor to grant administrative exemptions from ERISA's prohibited transaction provisions that parallels the similar authorization in § 4975(c) for the Treasury Department to grant administrative exemptions from the prohibited transaction provisions in the Code.

To ensure consistency in application, Reorganization Plan No. 4 of 1978, 5 U.S.C. App. 1, 92 Stat. 3790, provides that the authority of the Treasury Department to issue regulations, rulings, opinions, and exemptions under § 4975 of the Code is transferred, with certain exceptions not relevant here, to the Secretary of Labor. As a result, the Internal Revenue Service (IRS) is responsible for enforcing the excise tax provisions in § 4975(a) and (b) of the Code, but generally is bound by the DOL's interpretive regulations, rulings, opinions, and exemptions in determining whether a prohibited transaction has occurred. Section 3003 of ERISA provides that the DOL and the Treasury Department are to consult with each other from time to time with respect to the provisions of § 4975 of the Code relating to prohibited transactions and exemptions in order to coordinate the rules applicable under such standards. Section 3004 of ERISA further provides that whenever the DOL and the Treasury Department are required to carry out provisions relating to the same subject matter, the agencies are required to coordinate and develop rules, regulations, and practices that, to the extent appropriate for the efficient administration of such shared provisions, are designed to reduce duplication of effort, duplication of reporting, conflicting or overlapping requirements, and burden of compliance by plan administrators, employers, and participants and beneficiaries.

On April 8, 2016, the DOL published a final regulation defining who is a "fiduciary" of an employee benefit plan under § 3(21)(A)(ii) of ERISA as a result of giving investment advice to a plan or its participants or beneficiaries. The final rule also applies to the definition of a "fiduciary" of a plan under § 4975(e)(3)(B) of the Code. The final rule treats persons who provide investment advice or recommendations for a fee or other compensation with respect to assets of a plan as fiduciaries in a wider array of advice relationships than was true of the prior regulatory definition. On this same date, the DOL published the PTEs, which provide two new administrative class exemptions from the prohibited transaction provisions of ERISA and the Code, as well as amendments to previously granted exemptions. The PTEs would allow, subject to appropriate safeguards, certain broker-dealers, insurance agents, and others that act as investment advice fiduciaries, as defined under the final rule, to continue to receive a variety of forms of compensation that would otherwise violate prohibited transaction rules, triggering excise taxes and civil liability.

The final fiduciary duty rule became effective on June 7, 2016, and has an applicability date of April 10, 2017. The PTEs also have an applicability date of April 10, 2017, with a phased implementation period ending on January 1, 2018, for the BIC Exemption and the Principal Transactions Exemption. The President, by Memorandum to the Secretary of Labor dated February 3, 2017, directed the DOL to examine whether the fiduciary duty rule may adversely affect the ability of Americans to gain access to retirement information and financial advice and to prepare an updated economic and legal analysis concerning the likely impact of the rule as part of that examination. On March 2, 2017, the DOL published a notice in the Federal Register (82 FR 12319) seeking public comments on (i) a proposal to adopt a 60-day

delay of the April 10 applicability date described above, (ii) the questions raised in the Presidential Memorandum, and (iii) general questions of law and policy concerning the fiduciary duty rule and the related PTEs.  The March 2 notice stated that, if adopted as a final rule, the proposed 60-day delay would be effective on the date of publication in the Federal Register of a final rule delaying the April 10 applicability date.

The DOL issued FAB 2017-01 on March 10, 2017, to announce a temporary enforcement policy related to its proposal to extend for 60 days the applicability date of the fiduciary duty rule and the related PTEs.  The policy provides that:

A.  In the event the DOL issues a final rule after April 10 implementing a delay in the applicability date of the fiduciary duty rule and related PTEs, the DOL will not initiate an enforcement action because an adviser or financial institution did not satisfy conditions of the rule or the PTEs during the "gap" period in which the rule becomes applicable before a delay is implemented, including a failure to provide retirement investors with disclosures or other documents intended to comply with provisions of the rule or the related PTEs.

B.  In the event the DOL decides not to issue a delay in the fiduciary duty rule and related PTEs, the DOL will not initiate an enforcement action because an adviser or financial institution, as of the April 10 applicability date of the rule, failed to satisfy conditions of the rule or the PTEs, provided that the adviser or financial institution satisfies the applicable conditions of the rule or PTEs, including sending out required disclosures or other documents to retirement investors, within a reasonable period after the publication of a decision not to delay the April 10 applicability date.

Field Assistance Bulletin 2017-01 provides that, to the extent circumstances surrounding its decision on the proposed delay of the April 10 applicability date give rise to the need for other temporary relief, including retroactive prohibited transaction relief, the DOL will consider taking such additional steps as necessary with respect to the arrangements and transactions covered by the DOL temporary enforcement policy and any subsequent related DOL enforcement guidance.  Following the issuance of the FAB, stakeholders have raised concerns about the potential application of excise taxes under § 4975 and related reporting obligations in cases covered by the DOL's temporary enforcement policy.

**TRANSITION RELIEF**

Because the Code and ERISA contemplate consistency in the enforcement of the prohibited transaction rules by the IRS and the DOL, as further reflected in and facilitated by the statutory Reorganization Plan, the Treasury Department and the IRS have determined that it is appropriate to adopt a temporary excise tax non-applicability policy that conforms with the DOL's temporary enforcement policy described in FAB 2017-01.  Accordingly, the IRS will not apply § 4975 and related reporting obligations with respect to any transaction or agreement to which the DOL's temporary enforcement policy, or other subsequent related enforcement guidance, would apply.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response complies with the requirements of Fed. R. App. P. 27(d) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,199 words according to the count of Microsoft Word.

/s/ Michael Shih
MICHAEL SHIH
*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2017, I electronically filed the foregoing with the Clerk of the Court through the appellate CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and will be served through the CM/ECF system.

/s/ Michael Shih
MICHAEL SHIH
*Counsel for Appellees*